UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD MENDES,

                    Petitioner,

        v.

DANIEL WHITE,

                    Respondent.

CASE NO. 3:18-cv-05041-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: June 8, 2018

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Ronald Mendes, represented by counsel, filed his federal habeas Petition pursuant to 28 U.S.C. § 2254, seeking relief from his incarceration pursuant to several state court convictions. Dkt. 1. Petitioner alleges several incidents of prosecutorial misconduct violated his Fourteenth Amendment due process rights and that his counsel's failure to object to the alleged prosecutorial misconduct violated his right to effective assistance of counsel under the Sixth and Fourteenth Amendments. The Court finds the state court adjudication of both grounds was not contrary to, or an unreasonable application of, clearly established federal law. Therefore, the undersigned recommends the Petition be denied.

1

<u>BACKGROUND</u>

2

**I.      Factual Background**

3

Petitioner was convicted of one count of murder in the second degree (felony murder),

4

one count of unlawful possession of a firearm, and four counts of witness tampering in Pierce

5

County Superior Court. Dkt. 6, Ex. 1. The Washington State Supreme Court stated the facts of

6

the case on direct appeal:

7

> Mendes met Lori Palomo in October 2007, when Palomo was temporarily
> estranged from her long-term and live-in boyfriend, [Danny] Saylor. Palomo

8

> and Mendes engaged in a three-week intimate relationship that ended when Palomo
> returned to live with Saylor. Even though Saylor and Palomo were back together,

9

> Mendes occasionally came to Saylor's house to see Palomo. All three were
> methamphetamine users.

10

11

> One night, while Palomo's car was parked at Saylor's house, someone vandalized
> it. Palomo and Saylor suspected Mendes was the vandal and thereafter, Saylor did

12

> not want Mendes to come over. Palomo asked Mendes not to come around
> anymore.

13

> On January 27, 2008, Mendes returned to Saylor's house armed with a loaded .45
> caliber gun. Charles Bollinger, one of three house guests of Saylor's, met Mendes

14

> at the front door. Bollinger advised Mendes that he should not be at the home.
> Bollinger and Mendes went to a gas station and then returned to the home. During

15

> their trip to the gas station, Mendes showed Bollinger the gun. Upon returning to
> the house, Bollinger woke Saylor to inform him that Mendes was in the house.

16

> McKay Brown, another house guest, advised Mendes to leave, but he did not leave.

17

> Learning that Mendes was in the house, Saylor dressed and went to the front room.
> A brief "ruckus" occurred, in which Saylor pushed Mendes against the front door

18

> and the two swung at each other. Mendes then aimed the gun at Saylor and said,
> "I'll smoke you, mother fucker." Saylor left the front room to find his baseball bat,

19

> and Bollinger yelled at Mendes again to leave.

20

> During this time, Mendes claims that he tried to leave but could not move quickly
> because of a bad hip and at one point, he paused because he thought he dropped his

21

> methamphetamine. When Saylor returned to the front room with the bat in the air,
> Bollinger had Mendes near the front doorway. Mendes saw Saylor coming toward

22

> him with the bat in the air. Mendes immediately shot Saylor in the chest, killing
> him.

23

24

1
2
3
4

The jury found Mendes guilty of second degree murder and guilty of unlawful possession of a firearm. Mendes appealed and in an unpublished opinion, the Court of Appeals reversed his conviction. The Court of Appeals reversed because Mendes's trial counsel was ineffective for failing to request a revived self-defense jury instruction, and because the trial court erred in failing to instruct the jury that it could acquit Mendes of second degree murder if it found that he acted in self-defense when he committed the predicate assault.[1]

5
6
7
8
9

On remand and by amended information, the State charged Mendes with second degree intentional murder, second degree felony murder, and four counts of witness tampering. After the State's case in chief, Mendes asked the trial court whether he would be entitled to a self-defense instruction based on the State's evidence alone. The trial court declined to decide the motion until both sides rested. Mendes testified but told the court that his testimony would be given over his standing objection and that his decision to testify was based on the court's ruling. The jury convicted Mendes of second degree felony murder, the firearm enhancement, and four counts of witness tampering. Mendes was sentenced to 517 months.

10    Dkt. 6, Ex. 27, pp. 2-5; *State v. Mendes*, 180 Wash.2d 188, 190-92 (2014), *cert. denied* 135 S.

11    Ct. 1718 (2015) (citations to record omitted).

12    **II.    Procedural History**

13    Petitioner appealed to the Court of Appeals of the State of Washington, but his direct

14    appeal did not raise any of the grounds he includes in this Petition. Therefore, the Court declines

15    to analyze them in detail, but does provide a summary for procedural history.

16    On direct appeal, Petitioner argued: (1) the State failed to present sufficient evidence to

17    disprove beyond a reasonable doubt that Mendes was acting in self-defense; and (2) the trial

18    court's refusal to rule whether Mendes would be entitled to a self-defense instruction compelled

19    Mendes to waive his right not to testify in order to assert the defense. Dkt. 6, Ex. 19. Petitioner

20    also filed a pro se statement of additional grounds, raising five additional arguments: (1) the

21    State violated a pretrial order during cross-examination of Mendes by referring to his prior trial;

22    (2) the court erred by denying severance of the witness tampering charges from the murder

23    ───────────────

24    [1] *State v. Mendes*, noted at 156 Wash.App 1059, 2010 WL 2816974 (2010). [footnote by Court of Appeals]

charge; (3) the court erred by failing to give a revived self-defense instruction; (4) charging him

with murder in two separate counts alleging alternative means of committing the crime violated

double jeopardy; and (5) his right to a public trial was violated when the courtroom was closed

during voir dire. *Id.* at Ex. 20. The Washington State Court of Appeals rejected Petitioner's

arguments and affirmed his convictions. *Id.* at Ex. 22.

Petitioner filed a motion for discretionary review with the Washington State Supreme

Court. *Id.* at Ex. 23. That court granted review, but limited its determination to the issue of

compelled testimony. *Id.* at Ex. 24. After receiving additional briefing, the Washington State

Supreme Court affirmed Petitioner's convictions, holding the trial court has the discretion, but

not the duty, to provide an advisory ruling for jury instructions before both parties have rested.

*Id.* at Ex. 27; *Mendes*, 180 Wash.2d 188.

Petitioner then filed a personal restraint petition ("PRP") seeking state post-conviction

relief from the Pierce County convictions and sentence on March 17, 2016. Dkt. 6, Ex. 29. In

that PRP, he argued: (1) the prosecutor committed misconduct that violated his right to due

process; and (2) his trial counsel provided ineffective assistance when he did not object to that

misconduct. *Id.* The Washington State Court of Appeals rejected all his arguments and affirmed

his convictions. *Id.* at Ex. 32. Petitioner then sought discretionary review by the Washington

State Supreme Court (*Id.* at Ex. 33), which that court denied (*Id.* at Ex. 34). Petitioner filed a

motion to modify the ruling (*Id.* at Ex. 35), which that court also denied (*Id.* at Ex. 36). The

Washington State Court of Appeals issued a certificate of finality on January 10, 2018. *Id.* at Ex.

37. Petitioner then filed this Petition, raising the following grounds: (1) The prosecutor

committed misconduct in her closing argument when she: (A) conflated "fleeing" and

"retreating" when explaining Petitioner's self-defense claim; (B) characterized self-defense as a

matter of comparative rights; (C) expressed a personal opinion in her closing argument; and (D) improperly instructed jurors to imagine what they would do in Petitioner's place when determining whether he acted as a reasonable person, rather than instructing them about the objective reasonable person standard; and (2) Petitioner received ineffective assistance of counsel when his trial counsel failed to object to the above misconduct.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably

1    extends a legal principle from [Supreme Court] precedent to a new context where it should not

2    apply or unreasonably refuses to extend that principle to a new context where it should apply.'"

3    *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (*quoting Williams*, 529 U.S. at 407).

4         The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts

5    to presume the correctness of state courts' factual findings unless applicants rebut this presumption

6    with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court

7    decisions under §2254(d)(1) is "limited to the record that was before the state court that

8    adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

9                                    EVIDENTIARY HEARING

10        The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro*

11   *v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing

12   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

13   the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

14   28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*,

15   563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief

16   under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's

17   factual allegations or otherwise precludes habeas relief, a district court is not required to hold an

18   evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186. The Court finds it is not necessary to hold an

19   evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state

20   court record.

21

22

23

24

DISCUSSION

**I.      Prosecutorial Misconduct (Ground 1)**

In Ground 1, Petitioner alleges the prosecutor committed misconduct when she: (A) conflated "fleeing" and "retreating" when explaining Petitioner's self-defense claim; (B) characterized self-defense as a matter of comparative rights; (C) expressed a personal opinion in her closing argument; and (D) improperly instructed jurors to imagine what they would do in Petitioner's place when determining whether he acted as a reasonable person, rather than instructing them about the objective reasonable person standard.

A prosecutor commits misconduct if the prosecutor's improper comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (per curiam) (*Darden* standard is "clearly established [f]ederal law" for purposes of 28 U.S.C. § 2254(d)). Improprieties or breaches of courtroom decorum are not enough. *Darden*, 477 U.S. at 181. The question is not whether the prosecutor acted improperly, but whether she acted so improperly that, through the narrow lens of due process, Petitioner was denied a fair trial. *Id*. A trial error is presumed to be harmless unless the error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  It is the petitioner's burden to state facts that point to a real possibility of constitutional error in this regard.  *See O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir.1990).

Further, a prosecutor's conduct must be viewed in context to determine its probable effect on the jury's ability to fairly decide the case. *United States v. Young*, 470 U.S. 1, 11-12 (1985). As the Supreme Court noted:

 "The 'consistent and repeated misrepresentation' of a dramatic exhibit in evidence may profoundly impress a jury and may have significant impact on the jury's

deliberations. Isolated passages of a prosecutor's argument, billed in advance to the jury as a matter of opinion not of evidence, do not reach the same proportions."

*Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974).

Closing arguments are not evidence and ordinarily carry less weight with the jury than the court's instructions. *Boyde v. California*, 494 U.S. 370, 384 (1990); *Houston v. Roe*, 177 F.3d 901, 909 (9th Cir. 1999). Prosecutorial argument should not result in reversal where the trial court instructed the jury that its decision is to be based solely upon the evidence, where the defense did not object, where the comments were an "invited response," or where there is overwhelming evidence of guilt. *Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 640-45; *Jeffries v. Blodgett*, 5 F.3d 1180, 1191 (9th Cir.1993); *Hall v. Whitley*, 935 F.2d 164, 165-66 (9th Cir.1991).

A.   <u>Negating Petitioner's Revived Right to Self-Defense by Conflating "Fleeing" and "Retreating" (Ground 1A)</u>

Petitioner contends statements the prosecutor made in her closing argument conflated "fleeing" and "retreating" thereby negating Petitioner's "revived" self-defense claim in the eyes of the jury. Dkt. 1, pp. 6-7. As Petitioner explains, a "revived" self-defense claim arises when a defendant initiates an assault, but subsequently withdraws from the conflict before another party reinitiates the conflict and the defendant reacts by defending himself. *Id.*; *see also* Dkt. 6, Ex. 13, 1371-72; Dkt. 6, Ex. 30, App'x B, jury instruction 21. At trial, the prosecutor stated:

> The defendant, as you know, has also been charged with what we call felony murder, which is Count II. A felony murder is different than intentional murder because felony murder happens when somebody causes the death of another in the course of or in immediate flight from a particular felony crime. In this case, assault in the second degree. In this case, the defendant – the defendant pointed a gun at Danny Saylor and threatened to shoot him. In fact, he said, I'll kill you, mother fucker. That's an assault in the second degree.
>
> It was when defendant was fleeing from that assault in the second degree did he then shoot and kill Danny Saylor. Because it was in the flight therefrom, the law

says that you can be held accountable for someone's death when you are immediately fleeing from the felony. In this case, assault in the second degree. The defendant created that reasonable fear of bodily injury in Danny.

Dkt. 6, Ex. 13, pp. 1359-60.

The Washington State Court of Appeals, in ruling on Petitioner's PRP, stated:

To the extent Mendes asserts that the State's argument told the jury that it could not consider whether his shooting Saylor was in self-defense because he shot Saylor while attempting to flee and not during the initial assault, Mendes fails to consider this argument in context. At this point during its argument, the State was discussing the elements of felony murder, it was not addressing whether Mendes's self-defense claim applied equally to the intentional and felony murder charges.

*Id*. at Ex. 32, p. 22. In denying his petition for discretionary review, the Washington State Supreme Court similarly stated:

With this argument, Mr. Mendes contends, the prosecutor precluded him from claiming he had "withdrawn" from the earlier altercation and thus had a "revived" right of self-defense. But at this point in the argument the prosecutor made no mention of self-defense but was only discussing the elements of felony murder in accordance with the [jury] instructions. Nothing in the prosecutor's remarks precluded Mr. Mendes from arguing under law given to the jury that he had withdrawn from the altercation, that he had a right to defend himself from the victim's attack, and that he shot the victim in legitimate self-defense, and nothing precluded the jury from so finding. . . . Mr. Mendes was completely free to argue that any assault he committed was in lawful self-defense.

*Id*. at Ex. 34, p. 5.

Plaintiff argues the prosecutor's statements made it impossible for the jury to find he had "retreated" by conflating "fleeing" with "retreating," thereby improperly precluding his self-defense argument. However, as the state courts ruled, these statements were small sections in a lengthy argument after a lengthy trial. The judge at trial noted just before closing argument the jurors had been seated for more than two weeks and had heard the testimony of "about 24 witnesses that the state put on, and then the defendant took the stand as well." Dkt. 6, Ex. 13, p. 1343. The prosecutor's closing argument stretched for 22 pages in the transcript, and an

additional eight pages in rebuttal. *Id*. at pp. 1344-66, 1394-1402. Including defense counsel's

closing argument, the closing arguments and rebuttal account for 68 pages in the transcript. *Id*. at

pp. 1144-1402. Though repeated misrepresentation of evidence can demonstrate prejudice,

generally, an isolated passage in an attorney's argument will not. *Donnelly*, 416 U.S. at 646. In

addition, an essential part of the prosecutor's case was that Petitioner fled, rather than retreated.

Stating as such in the closing argument was thus not improper. The prosecutor also referenced

the elements for the revived self-defense argument in other sections of her closing argument. *Id*.

at pp. 1358-59; 1400-01.

Further, as the state courts noted, the prosecutor's actions did nothing to preclude

Petitioner from arguing his revived self-defense argument. Indeed, the defense counsel made the

revived self-defense argument a primary point of his closing argument. Dkt. 6, Ex. 13, pp. 1368,

1370-73.  Importantly, just before the start of closing argument the court advised the jury that

closing argument is not evidence and then provided the jury with an instruction setting out both

the standards for self-defense as well as the situation in which self-defense may be "revived." *Id*.

at pp. 1343; 1341 (jury instructions not transcribed, but included at Dkt. 6, Ex. 30, App'x B, jury

instructions 18, 21).

When read in context of the overall closing argument and when considering the length of

trial and amount of evidence presented to the jury, Petitioner has not demonstrated the

prosecutor's comments generated a "substantial and injurious effect" on the jury's verdict.

*Brecht*, 507 U.S. at 637. In addition, under federal law, a prosecutor's comment in closing

argument should not result in reversal of a conviction when the jury was properly instructed to

utilize the evidence at trial, not counsels' comments, in their deliberations. *Darden*, 477 U.S. at

182. Such is the case here. The court advised the jury that neither counsels' arguments were

evidence and provided a written jury instruction affirming this. Dkt. 6, Ex. 13, p. 1343; Dkt. 6, Ex. 30, App'x B, jury instruction 1. Because the prosecutor's comments were neither improper nor prejudicial, Petitioner has not demonstrated that the state court's conclusion that the prosecutor did not commit misconduct in her closing argument when explaining Petitioner's self-defense claim was contrary to, or an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented at trial. Therefore, the Court recommends the Petition be denied as to Ground 1A.

B. Negating Petitioner's Right to Self-Defense by Characterizing It as a Matter of Comparative Rights (Ground 1B)

Petitioner also contends the prosecutor's closing argument allegedly characterized Petitioner's self-defense claim as reliant on the comparative lawfulness of Petitioner's and the victim's (Danny Saylor) actions. Petitioner specifically cites the follow passages:

> First, we can't lose sight of what this case was about. This case was about Danny Saylor. Danny Saylor has been reduced to an exhibit. Danny Saylor is now Exhibit 1. Why did Danny Saylor die? Well, the defendant would have you believe that Danny Saylor died because it was Danny Saylor's own fault, that it was Danny Saylor's own actions. . . . Danny did nothing but defend himself in his own home on the night of January 28th, 2008.

Dkt. 6, Ex. 13, p. 1345.

> When Danny came back out with the bat, Danny was defending himself in his own home against an intruder who at this point had come into his house uninvited by him and now actually pointed a gun at him. These were all the defendant's actions. Again, this is a defendant who had been warned not to go there in the first place.

> So at that point, the defendant shot Danny while Danny was doing what anyone else may have done in that same situation. What any other homeowner may have done in that same situation was defend themselves and the other people in their house and their home and property.

> Now, the defendant is trying to lay the blame on Danny Saylor. Now, remember, the defendant is the one who made choices, and that's why he's here today. We are not here to decide if the defendant is necessarily a bad person. We are here to decide

1    whether or not the choices he made on January 28th amount to guilt of murder.
     Danny was simply minding his own business in his home.
2

3    *Id.* at pp. 1350-51

4        Another jury instruction that's important here is the no-duty-to-retreat instruction.
         It's Instruction No. 28. This is basically a-man's-home-is-his-castle instruction.
         This jury instruction applies to Danny Saylor. It's not up to Danny Saylor to retreat.
5        In this case, he did not retreat. He does not have to retreat. He is in his own home.
         Danny Saylor went to the back of his house to look for a weapon, but at no time did
6        Danny Saylor retreat and at no time does the law require a homeowner to retreat.
         Danny Saylor has the right to stand his ground in his own home just like any
7        homeowner can do. He has the right to protect it and whoever's inside. In this case,
         Danny did that. All of the Dany's actions were, again, reactions to every move the
8        defendant made. They were in conformity of the law. Danny had the right [to] do
         what he needed to do to get an unwanted person out of his house. When that
9        unwanted person pulled a gun, Danny had the right to stand his ground and react.

10   *Id.* at pp. 1354-55.

11       I'm going to ask that you ferret out the truth from the lies and come up with a verdict
         that reflects the truth. Again, this case is about the defendant's choices. If the
12       defendant didn't make the choices he did that night, Danny Saylor would be alive
         today. Danny Saylor did absolutely nothing wrong, and the defendant should be
13       held for killing him on January 28th.

14   *Id.* at p. 1366.

15       [Opposing] [c]ounsel also suggests that if the roles were changed, that we'd be
         prosecuting Danny Saylor. Again, take that back with you knowing that Danny
16       Saylor actually has a legal right to be where he is. He had no duty to retreat
         whatsoever. And as a homeowner, he has absolutely the right to defend himself in
17       his own home. We see these types of cases during the year a few times, and the
         homeowner gets to defend themselves. Again, no duty to retreat on Danny Saylor's
18       part.

19   *Id.* at p. 1396.

20       In rejecting Petitioner's assertion that these statements were improper, the Washington

21   State Court of Appeals stated:

22       A prosecutor has wide latitude in closing arguments to draw reasonable inferences
         from the facts in evidence and to express such inferences to the jury. *State v.*
23       *Dhaliwal*, 150 Wn.2d 559, 577 (2003). Considering the State's closing argument
         as a whole, it is clear that these portions of the State's argument addressed Mendes's
24

REPORT AND RECOMMENDATION - 12

self-defense claim. The State's argument that Mendes's acts, rather than Saylor's acts, were the acts of aggression related directly to whether Mendes was the first-aggressor, which was in turn relevant to whether the State had disproved Mendes's self-defense claim. In context, the State's references to Saylor having no duty to retreat were relevant to whether Saylor became the aggressor after leaving the room and then returning with the baseball bat. This is proper argument. *See State v. McKenzie*, 157 Wn.2d 44, 56-57 (2006) (State's references to defendant's guilt were proper argument when the argument was made in response to defense counsel's interpretation of the evidence and was emphasizing facts that supported the State's case theory).

*Id*. at Ex. 32, p. 14 (parallel citations omitted).

Here, Petitioner argues the prosecutor acted improperly when she referenced the fact that Saylor had no duty to retreat. However, the state court concluded that the reference to this lack of a duty was proper argument because it was relevant to Petitioner's self-defense claim. The Court agrees. Petitioner's counsel based a large portion of his own closing argument on self-defense. Dkt. 6, Ex. 13, pp. 1368, 1370-73. A major aspect of the self-defense argument in this case is who the initial aggressor was and whether Petitioner's actions could be reasonably seen as self-defense based on who the initial aggressor was – an aspect discussed at length in defense counsel's closing argument. Dkt. 6, Ex. 13, pp. 1371-73 (discussing the case as a parallel to a bar fight); *see also* Dkt. 6, Ex. 30, App'x B, jury instructions 20, 21 (explaining that defendant may not claim self-defense if he was the initial aggressor, but may revive his self-defense claim if the defendant can show he retreated from the conflict). The prosecutor's discussion of whether Petitioner's actions were reasonable based on his alleged invasion of Saylor's home and Saylor's right to be in that home was thus not improper.

Further, "[c]ounsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415 (9th Cir. 1993)). The prosecutor argued that Saylor's

1   actions in retrieving a baseball bat were reasonable and that it was Petitioner's actions in reaction

2   to this did not amount to self-defense. *See* Dkt. 6, Ex. 13, pp. 1350-51. She argued defendant

3   should be convicted because "Saylor did absolutely nothing wrong," stating that any reasonable

4   person would have done what Saylor did. *Id.* at p. 1366. However, by arguing that Saylor had

5   "the legal right to be where he [was]" and had the "right to defend himself in his own home," the

6   prosecutor was not stating self-defense is reliant on the comparative lawfulness of the parties.

7   Dkt. 6, Ex. 13, p. 1396. Rather, she was using the fact that Saylor's right to be in his home made

8   it more likely that Petitioner, an alleged intruder, was the initial aggressor and therefore not

9   entitled to self-defense. Indeed, the prosecutor's closing argument begins with the statement "[i]n

10  this case, Danny Saylor died because defendant made a series of choices." *Id.* at p. 1345. She

11  argued not that Saylor's actions were legal and therefore Petitioner's were not, but that, based on

12  the situation, Petitioner was not acting in self-defense when he shot Saylor. Though the

13  prosecutor made several statements and so they are not an isolated incident as discussed in

14  section 1A *supra* or sections 1C and 1D *infra*, neither are they a repeated misrepresentation of

15  evidence amounting to jury prejudice. The prosecutor's statements were neither improper nor

16  unlawfully prejudicial.

17      In addition, the trial court provided the jury with instructions on the duty to retreat, or

18  lack thereof, as well as instructions on determining who the initial aggressor was in the situation.

19  Dkt. 6, Ex. 30, App'x B, jury instructions 20, 23. Again, in light of the evidence presented at trial

20  and the instructions provided to the jury, Petitioner has not demonstrated the prosecutor's

21  comments generated a "substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at

22  637.

23

24

1    Further, a prosecutor's comment should not result in reversal of a conviction when the

2    jury was properly instructed to only consider the evidence at trial, not counsels' comments.

3    *Darden*, 477 U.S. at 182. Here, as noted above, the trial court advised the jury that neither

4    counsels' closing arguments were evidence and provided a written jury instruction affirming the

5    same. Dkt. 6., Ex. 13, p. 1343; Dkt. 6, Ex. 30, App'x B, jury instruction 1. Because the

6    prosecutor's comments were neither improper nor prejudicial and because the jury was properly

7    instructed, Petitioner has not demonstrated that the state court's conclusion that the prosecutor

8    did not commit misconduct when referencing Saylor's right to defend his home was contrary to,

9    or an unreasonable application of, clearly established federal law, or an unreasonable

10   determination of facts in light of the evidence presented. Therefore, the Court recommends

11   denying the Petition as to Ground 1B.

12       C.  Expressing a Personal Opinion in Closing Argument (Ground 1C)

13       Petitioner argues the prosecutor improperly commented on a personal opinion in closing

14   argument when she stated "[w]e [prosecutors] see these types of cases during the year a few

15   times, and the homeowner gets to defend themselves." Dkt. 6, Ex. 13 at p. 1396.

16       The Washington State Court of Appeals concluded the statement was improper, but

17   found it was not flagrant or ill-intentioned so as to prejudice Petitioner's trial:

18       Here, the State's reference to the frequency with which the prosecutor's office sees
         cases in which the homeowner was entitled to defend himself or herself was clearly
19       not a reference to the evidence. Instead, it communicated to the jury that the
         prosecutor believed that this case was similar to other cases in which a homeowner
20       was legally acting defensively. At the very least, the State was arguing facts that
         were not in evidence when it mentioned the fact that the prosecutor's office saw
21       these types of cases frequently. Furthermore, its assertion that this case was like
         those cases goes beyond the evidence and expresses personal opinion. Thus, this
22       argument was improper.

23       We next consider whether the improper argument was so flagrant and ill intentioned
         that it evinces an enduring and resulting prejudice and this prejudice cannot be

24

> cured by a jury instruction. Although this argument touched on Mendes's self-defense claim, the jury was properly instructed on the self-defense claim, this was a minor comment given the length of the argument, and defense counsel could have moved for an instruction directing the jury to not consider this argument and reminding the jury that the State's argument was not evidence. Because of this, we hold that this argument fails.

Dkt. 6, Ex. 32 at p. 16.

Here, Petitioner argues the prosecutor's comment used a personal opinion to vouch for the verity of her overall argument. Under federal law, Petitioner must show the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a violation of due process. *Darden*, 477 U.S. at 181. However, he has not done so. The Court agrees that using the prosecutor's position of authority to vouch for the credibility of evidence is improper. *See United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). However, Petitioner must show both that the prosecutor's actions were improper *and* that those actions prejudiced the jury. As noted above, the trial was over two weeks long and this single comment was couched amidst 68 pages of both parties' closing arguments and the prosecutor's rebuttal. Dkt. 6, Ex. 13, pp. 1344-1402. Though a repeated misrepresentation of evidence can demonstrate a jury was prejudiced, an isolated passage in a prosecutor's argument, as argued here, does not generally reach those proportions. *Donnelly*, 416 U.S. at 646.

In addition, juries are presumed to follow the instructions provided to them by the Court. *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000). Here, the Court provided a jury instruction explaining that the members of the jury are "the sole judges of the value or weight to be given to the testimony of each witness." Dkt. 6, Ex. 30, App'x B, jury instruction 1. Because the Court assumes the jury follows their instructions during deliberations and because of the brevity of the comment, the Court concludes Petitioner has not shown this comment was so egregious as to prejudice his entire trial.

1     Further, as noted above, a prosecutor's comment should not result in reversal of a

2   conviction when a jury has been properly instructed to only consider the evidence, rather than

3   counsel's comments. *Darden*, 477 U.S. at 182. Again, the Court reiterates the trial court

4   admonished the jury to only examine the evidence, and submitted a written jury instruction

5   affirming the same. Dkt. 6, Ex. 13, p. 1343; Dkt. 6, Ex. 30, App'x B, jury instruction 1. Because

6   Petitioner cannot show his trial was irreparably prejudiced or that the prosecutor's comment had

7   a substantial and injurious effect on the verdict such to deprive him of due process, the

8   prosecutor's comments do not amount to prosecutorial misconduct. Thus, the state court's

9   conclusion that the statement was not so prejudicial as to violate due process was not contrary to,

10   or an unreasonable application of, clearly established federal law, or an unreasonable

11   determination of facts in light of the evidence presented. Therefore, the Court recommends

12   denying the Petition as to Ground 1C.

13     D.   Incorrectly Framing the Reasonable Person Standard (Ground 1D)

14     Petitioner also alleges the prosecutor misstated the self-defense reasonable person

15   standard when she stated:

16     . . . [W]hat I think is the most important part of self-defense is that the defendant
        employed such force and means as a reasonably prudent person would use under
17     the same or similar circumstances as they reasonably appear to the defendant taking
        into consideration all the facts and circumstances as they appeared to him at the
18     time of and prior to the incident. *The short story for that is would you have done
        what the defendant did if you knew what he knew.*

19
      Dkt. 6, Ex. 13 at pp. 1357-58 (emphasis added).
20
        Counsel also brings up that the state has the burden of proving – disproving beyond
21     a reasonable doubt – that it was not self-defense. That jury Instruction 18. I agree.
        That's laid out; that's the law. But in this case, it's fairly simple for the State to
22     disprove it because the defendant doesn't even get to the third prong in this, which
        was, again, *would you have done what the defendant did if you knew what he knew*?

23
      *Id.* at p. 1399 (emphasis added).
24

Using the Washington legal standard, the Washington State Court of Appeals found:

> Here, the trial court could have cured the improper argument by directing the jury to the jury instructions, which contained the correct reasonable person standard. Although there is always a risk that repetition of an improper argument can result in prejudice that cannot be cured, and the State made a similar argument earlier in the course of its closing argument, the challenged argument was a minor comment during a lengthy argument. The State also advised the jury of the proper standard, and the jury instructions gave the jury the proper standard. Given this, we reject this argument because the improper argument was not so flagrant or ill intentioned that it could not have been cured.

*Id*. at Ex. 32, pp. 18-19.

Petitioner argues the prosecutor's comments misinformed the jury about the appropriate reasonable person standard, thereby irreparably prejudicing his trial. The Court agrees the prosecutor misstated the "reasonable person" standard. *See United States v. Keyser*, 704 F.3d 631, 642-43 (9th Cir. 2012) (noting the "reasonable person" standard is objective and "not based on the actual people involved in the case"). However, as above, to recover under federal law, Petitioner must demonstrate the prosecutor's comments were so harmful as to have a substantial and injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 637. When instructing the jury as to the homicide charge, the trial court submitted a jury instruction, indicating the appropriate amount of force warranted for self-defense is:

> [S]uch force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to him, at the time of and prior to the incident.

Dkt. 6, Ex. 30, App'x B, jury instruction 18. The trial court provided a similar instruction on self-defense as to the assault charge, again stating the appropriate amount of force is:

> [S]uch force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

REPORT AND RECOMMENDATION - 18

1   *Id.*, jury instruction 19.

2   These instructions provide the correct, objective reasonable person standard for self-

3   defense. The Court assumes the jury will follow its instructions, and Petitioner has provided

4   nothing to indicate that the jurors used the prosecutor's argument, rather than their instructions,

5   when they rendered their decision. *Drayden*, 232 F.3d at 713. Petitioner thus has not shown the

6   jury was affected at all by the prosecutor's comment, let alone that the comment rises to the level

7   of substantial injury.

8   Further, a conviction should not be reversed based on a prosecutor's comments in closing

9   argument if the jury has been properly instructed to examine the evidence at trial, rather than

10  counsel's comments. *Darden*, 477 U.S. at 182. The Court reiterates once again that the trial court

11  admonished the jury to only examine the evidence, and submitted a written jury instruction

12  affirming the same. Dkt. 6, Ex. 13, p. 1343; Dkt. 6, Ex. 30, App'x B, jury instruction 1. Because

13  Petitioner has not demonstrated that the prosecutor's misstatement of the reasonable person

14  standard had a substantial and injurious effect on the verdict such to deprive him of due process,

15  this comment does not amount to unconstitutional prosecutorial misconduct. The state court's

16  conclusion that the statement was not so flagrant or ill-intentioned as to constitute prosecutorial

17  misconduct or so harmful as to make the entire trial unfair was thus not contrary to, or an

18  unreasonable application of, clearly established federal law, or an unreasonable determination of

19  facts in light of the evidence presented. Therefore, the Court recommends the Petition be denied

20  as to Ground 1D.

21  **II.    Ineffective Assistance of Counsel (Ground 2)**

22  For his Second Ground, Petitioner argues that he received ineffective assistance of counsel

23  because his trial counsel failed to object to the above alleged misconduct. In *Strickland v.*

24

REPORT AND RECOMMENDATION - 19

*Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

First, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted). Second, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The state court first determined that the prosecutor did not commit misconduct when she discussed Petitioner's flight after the assault (Ground 1A) or when she described Saylor's right to stand his ground (Ground 1B). Dkt. 6, Ex. 32 at pp. 14, 21, 23. Because the prosecutor did not commit misconduct, the state court found Petitioner's counsel could not have been deficient for failing to object to non-objectionable statements. *Id*. The Court agrees. Trial counsel cannot be said to be ineffective when he fails to object to conduct that is not, in fact, improper. *See Kimmelman v.*

1  *Morrison*, 477 U.S. 365, 375 (1986) (counsel's failure to raise meritless argument is not ineffective

2  assistance).

3         The state court next found the prosecutor acted improperly when she expressed her

4  personal opinion in the closing statements (Ground 1C) and when she provided the improper

5  definition of the "reasonable person" to the jury (Ground 1D). *Id.* at pp. 17, 19. However, the state

6  court found that, regarding the statement of opinion, "given this was one single statement, defense

7  counsel could have had reasonable tactical reasons for not objecting such as not wanting to draw

8  attention to this brief statement." *Id.* at p. 17. The Court agrees. When analyzing ineffective

9  assistance of counsel, "the relevant inquiry under *Strickland* is not what defense counsel should

10  have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs*

11  *v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998). Here, defense counsel's actions could reasonably

12  be attributed to the desire not to draw attention to the opinion testimony. The Court has a strong

13  presumption that counsel's actions were sound trial strategy rather than inappropriate error.

14  *Strickland*, 466 U.S. at 689. Further, because the Court also presumes the trial court made a

15  reasonable determination, the Court's presumption that trial counsel acted effectively is "doubly

16  deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540

17  U.S. 1, 6 (2003). Petitioner has not provided anything to demonstrate that trial counsel committed

18  errors at trial, nor that those errors changed the outcome. *Strickland*, 466 U.S. at 689. Thus, when

19  determining counsel was not ineffective, the state court did not make a decision contrary to, or an

20  unreasonable application of, clearly established federal law.

21         Similarly, the state court concluded "defense counsel could have chosen not to object to the

22  brief misstatements of law [challenged in Ground 1D] in order to avoid drawing attention to this

23  improper argument. Dkt. 6, Ex. 32, p. 19. Here, again, the Court indulges a strong presumption that

24

1  defense counsel's actions were within the range of acceptable assistance, and defense counsel's

2  choice not to object could have been trial strategy designed to avoid drawing attention and

3  Petitioner has not demonstrated otherwise. *Strickland*, 466 U.S. at 689. Petitioner has again failed

4  to provide anything that demonstrates counsel's actions were in error or that the error changed the

5  result of the trial. The Court is doubly deferential when determining ineffective assistance in a

6  habeas proceeding. *Yarborough*, 540 U.S. at 6. Therefore, when again determining counsel was not

7  ineffective, the state court's decision was not contrary to, or an unreasonable application of,

8  clearly established federal law, or an unreasonable determination of facts in light of the evidence

9  presented. Therefore, the Court recommends the Petition be denied as to Ground 2.

10                                    CERTIFICATE OF APPEALABILITY

11          A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

12  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

13  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

14  may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

15  constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

16  that jurists of reason could disagree with the district court's resolution of his constitutional

17  claims or that jurists could conclude the issues presented are adequate to deserve encouragement

18  to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,

19  529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of

20  Petitioner's claims or would conclude the issues presented in the Petition should proceed further.

21  Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect

22  to this Petition.

23

24

CONCLUSION

For the reasons set forth above, the Court recommends the Petition be denied as to all grounds.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on June 8, 2018, as noted in the caption.

Dated this 22nd day of May, 2018.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION - 23